UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

KATHERINE DEE FLETCHER,

                   Plaintiff,

   v.

DREESEN, *et al.*,

                 Defendants.

Case No. 2:22-cv-01777-MMD-NJK

ORDER

## I.    SUMMARY

*Pro se* Plaintiff Katherine Dee Fletcher, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC") at Florence McClure Women's Correctional Center ("FMWCC"), asserts claims under 42 U.S.C. § 1983 for events that occurred when she was placed in an isolation cell for 33 days. (ECF No. 116.) This order addresses the following, pending matters: (1) Defendants' motion to dismiss (ECF No. 159 ("Motion"))[1]; and (2) Plaintiff's objection to the Court's May 19, 2025, minute order (ECF No. 248) deeming her motion for voluntary dismissal withdrawn (ECF No. 249 ("Objection")). For the reasons discussed herein, the Court grants the Motion as it relates to Plaintiffs' fourth claim regarding denial of access to courts and denies the Motion as to the remaining claims. The Court further overrules Plaintiff's Objection.

      The Court notes that Plaintiff recently filed two notices of appeal. (ECF No. 257, 258.) These notices appear to challenge the Ninth Circuit Court of Appeals' order dismissing her prior appeal, as they both reference the Court of Appeals' dismissal order (ECF No. 253). Even if Plaintiff is attempting to challenge this Court's rulings, her appeals are improper because the Court has not issued any appealable order. Accordingly, Plaintiff's most recent notices of appeal do not affect the Court's jurisdiction. *See*

---

[1]Plaintiff filed a response (ECF No. 216) and Defendants replied (ECF No. 218).

*Nascimento v. Dummer,* 508 F.3d 905, 908 (9th Cir. 2007) (holding that a defective appeal—an appeal of a non-appealable interlocutory order—"does not transfer jurisdiction to the appellate court, and so the ordinary rule that the district court cannot act until the mandate has issued on the appeal does not apply").

## II.    RELEVANT BACKGROUND

The following background facts are adapted from the second amended complaint (EC No. 116 ("SAC")) and the Court's order screening the SAC (ECF No. 127 ("Screening Order")). Plaintiff's claims stem from her time in an isolation cell at FMWCC between September 12, 2022, and October 14, 2022. (ECF No. 116.)

Fletcher is a member of the Jehovah's Witnesses. (*Id.* at 2.) On September 12, 2022, Plaintiff declined the "annual prisoner injection" due to her religion. (*Id.* at 8.) After her refusal, Correctional Officer ("C/O") Howard locked Plaintiff in her room for hours. (*Id.*) When Howard asked Plaintiff why she declined the injection, she responded that God did not want her to have the injection. (*Id.*) Howard eventually took Plaintiff to Associate Warden Nash. (*Id.*) Nash had Lt. Wells handcuff Plaintiff and take her to Operations, where 15 people confronted her. (*Id.*) After confirming that Plaintiff's actions were part of her faith, Warden Dreesen had Plaintiff moved to an isolation cell for 33 days. (*Id.*) During this 33-day isolation, C/O Smith prevented Plaintiff from accessing her bibles, bible study workbook, congregation publications, spiritual literature, and other supplies. (*Id.* at 8-9.) This impeded Plaintiff's spiritual health and forced her to break her faith. (*Id.* at 9.)

While in isolation for 33 days, Plaintiff suffered substantial harm from the "absolutely horrid" conditions. (*Id.* at 10.) The cell had a built-in shower so she never had to leave the cell. (*Id.*) However, these isolation showers flooded. (*Id.*) When Plaintiff attempted to use her shower, her cell flooded. (*Id.*) The shower caused a major fall hazard and was a breeding ground for black mold. (*Id.*) The linoleum was rotten, cracked, lifting, and buckled from the water damage and caused a tripping hazard when dry. (*Id.*) There were rust stains and "fuzzy dark black hairy mold growing out along the cracks [and] crevasses." (*Id.*) Beneath the linoleum, Plaintiff discovered a "thick black ooze." (*Id.*) Black

mold and flood water drew gnats and caused "disgusting rust." (*Id.*) Plaintiff had an allergy to mold and had to breathe in black mold for 33 days. (*Id.* at 11). Plaintiff's exposure to the black mold caused her to have prolonged breathing issues and other health issues. (*Id.* at 3-6.)

Property supervisor Smith wrongfully withheld Plaintiff's legal documents, supplies, and calls from September 12, 2022, through October 14, 2022. (*Id.* at 14). Plaintiff did not have her address book and contact information and was "rendered unable to effectively communicate with legal counsel during a critical stage" of her criminal appeal. (*Id.*) As a result, Plaintiff's attorney lost on direct appeal. (*Id.*)

Following screening of the SAC, the Court permitted Plaintiff to proceed on four claims: (1) A First Amendment free exercise of religion claim based on allegations that after Plaintiff declined a medical injection, she was locked up for hours, then placed in an isolation cell for 33 days and was denied access to her religious items, preventing her from practicing her religion (claim 1); (2) an Eighth Amendment conditions-of-confinement claim based on allegations Plaintiff was subjected to black mold and slippery floors (claim 2); (3) a denial of access to the courts claim based on Plaintiff's inability to communicate with her attorney for her direct criminal appeal (claim 4); and (4) a deliberate indifference to serious medical needs claim based on exposure to black mold exacerbating preexisting health issues and causing other health issues (claim 5). (ECF No. 127 at 4-11.)

///
///
///
///
///
///
///
///

3

1    **III.    DISCUSSION**

2        **A.    Motion to Dismiss (ECF No. 159)**

3        Defendants seek dismissal of all four claims based on the merits[2] as well as

4    qualified immunity.[3] The Court will address Defendants' arguments as to each claim in

5    turn.

6                **1.    Claim 1: First Amendment Free Exercise Clause**

7        Defendants insist that Fletcher fails to state a First Amendment free exercise claim

8    by reframing her claim as declining a mandatory tuberculosis test. In particular,

9    Defendants contend Plaintiff's quarantine in a "negative airflow infirmary cell" for the

10   month in question was reasonably justified because she refused a mandatory

11   tuberculosis injection, and they have a penological interest in administering tuberculosis

12   test for latent tuberculosis.[4] (ECF No. 159 at 8.) They also insist that removing her

13   property from the isolation cell was reasonable to protect her property from water

14   damage. (*Id.* at 9.)

15       First and foremost, Defendants incorrectly characterize Plaintiff's allegations in

16   support of her first claim by stating that she was simply placed in a "negative airflow

17   infirmary cell." (ECF No. 159 at 8-9.) Plaintiff alleges she was first "locked in [her] room

18   _____

19   [2]Defendants include the standard governing dismissal under Fed. R. Civ. P.
     12(b)(6), but do not appear to make a failure-to-state-a-claim argument. (ECF No. 159
20   at 4-5.) Moreover, the Court already found in its Screening Order that Plaintiff has
     sufficiently alleged violation of her rights under the First Amendment and the Eight
21   Amendment. (ECF No. 127 at 4-11.) The Court incorporates by reference its Rule 12(b)(6)
     analysis from the Screening Order.

22   [3]Defendants' arguments are primarily based on their selective reading of the SAC
     while Plaintiff's response includes allegations that are not part of the claims in this case.
23   The Court declines to address Plaintiff's unrelated allegations because they do not affect
     resolution of Defendants' Motion.
24
     [4]"A person asserting a free exercise claim must show that the government action
25   in question substantially burdens the person's practice of her religion." *Jones v. Williams*,
     791 F.3d 1023, 1031 (9th Cir. 2015). At the summary judgment stage, courts evaluate
26   prison regulations alleged to infringe on constitutional rights under the "reasonableness"
     test set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). *See O'Lone v. Estate of
27   Shabazz*, 482 U.S. 342, 349 (1987); *Hrdlicka v. Reniff*, 631 F.3d 1044, 1046-50 (9th Cir.
     2011) (analyzing the *Turner* factors applied during summary judgment on appeal). Here,
28   Defendants apparently argue their actions were reasonably justified because of Plaintiff's
     refusal to take the tuberculosis test and because of the wet condition of the isolation cell.

for many hours" and later "thrown [her] into an isolated cell behind an empty room at the back-corner of the infirmary where [she] was wrongly & needlessly kept for 33 days of horror." (ECF No. 116 at 8.) She further alleges that during that entire time, her religious items were kept from her, preventing her from exercising her spiritual health and activities. (*Id.* at 8-9.) Plaintiff did not allege her properties were removed to avoid water damage, as Defendants contend in their Motion. Rather, Defendants improperly supplied information to change the character of Plaintiff's allegations to argue that their actions were justified. However, in considering whether Plaintiff has stated a claim, the Court must accept all well pleaded allegations as true and draw all reasonable inferences in her favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Viewed under this standard, the Court must reject the gratuitous supplementary allegations in Defendants' Motion, as those factual contentions are inappropriate at this stage. Again, Plaintiff's claim extends to alleged actions taken by Defendants after she declined the tuberculosis test, which included locking her up in a room, placing her in an isolation cell in "absolutely horrid" conditions for 33 days and then refusing to give Plaintiff her religious items preventing her from practicing her religion during that time period. These allegations plausibly state a claim for First Amendment free exercise clause violations.

Defendants' qualified immunity argument is also grounded on their incorrect characterization of Plaintiff's claim. They argue that they are entitled to qualified immunity because "there is no law clearly establishing that a prison may not mandate compliance with testing for latent tuberculosis." (ECF No. 159 at 9.) But as noted, Plaintiff's claim is not limited to mandated testing for tuberculosis. Accordingly, the Court denies Defendants' Motion as to the first claim.

### 2.    Claim 4: First Amendment Access to Courts

Defendants argue Plaintiff cannot show an actual injury because Defendants' decision to deprive Plaintiff of her address book, thereby impeding her contact with her attorney for her direct criminal appeal, could not have been the reason she lost her appeal. (ECF No. 159 at 9-10.) They cite to the Nevada Supreme Court's decision in

*Fletcher v. State*, 516 P.3d 19 (Nev. 2022), filed on August 25, 2022, affirming Plaintiff's criminal conviction. The Court takes judicial notice of this decision and its date. *See Rosales-Martinez v. Palmer*, 753 F.3d 890, 894 (9th Cir. 2014) ("It is well established that we may take judicial notice of judicial proceedings in other courts."). Because the decision on Plaintiff's direct criminal appeal was issued before the start of Plaintiff's 33 days in the isolation cell (September 12, 2022), the Court agrees with Defendants that Plaintiff cannot show their conduct caused the injury Plaintiff alleges[5]—losing her direct criminal appeal.

Plaintiff argues that the period in the isolation cell prevented her from effectively communicating with her attorney in that she was not served with the order on her criminal appeal until weeks later, which apparently affected her petition for rehearing. (ECF No. 216 at 19.) Plaintiff then offered to stipulate to dismissal of this claim without prejudice "as to criminally related claims."[6] (*Id.*) But as Defendants point out in their reply, on September 19, 2022, the Nevada Supreme Court issued an order directing a return of Plaintiff's *pro se* emergency motion seeking rehearing and granting her counsel a *sua sponte* extension of time to seek rehearing. (ECF No. 218-2 at 1.) With this in mind, Plaintiff cannot allege facts to cure the causation issue, even if the Court permits her to amend her allegations to include the impact on her attempt to seek a petition for rehearing. Accordingly, the Court grants Defendant's Motion as to the second claim for denial of access to the Court.[7] Dismissal of this claim is with prejudice as amendment is futile.

### 3.    Claims 2 and 5: Eighth Amendment Conditions of Confinement and Deliberate Indifference

---

[5]An "actual injury" exists when there is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis v. Casey*, 518 U.S. 343, 348 (1996).

[6]To be clear, dismissal of Plaintiff's claim for denial of access to the court in this action, with or without prejudice, does not have any impact on Plaintiff's criminal case.

[7]The Court declines to address Defendants' alternative argument for dismissal under *Heck v. Humphrey*, 512 U.S. 77 (1994). (ECF No. 159 at 14-15.)

Defendants contend Plaintiff fails to state Eighth Amendment claims—and that they are entitled to qualified immunity—because Plaintiff's allegations that the floors were slippery are legally insufficient without allegations that she was not able to provide for her own safety. (ECF No. 159 at 12-13.) In the Screening Order, the Court recognized that allegations of slippery floors alone are generally insufficient to state a claim for cruel and unusual punishment. (ECF No. 127 at 6-7.) But the Court addressed the narrow exception: when an inmate has "a known exacerbating condition," "[s]lippery floors without protective measures could create a sufficient danger to warrant relief." *Carter v. Gastelo*, No. 2:19-cv-08986, 2021 WL 2542958, at *10 (C.D. Cal. Apr. 26, 2021) (collecting cases), *adopted by* 2021 WL 2534986 (C.D. Cal. June 17, 2021). (ECF No. 127 at 7.) Under this exception, "awareness of a prisoner's disability or proclivity toward falling may turn a slippery prison floor into a potential constitutional claim, depending on the level of danger and awareness." *Jones v. Meddly*, No. 1:17-cv-00109, 2019 WL 3302358, at *7 (E.D. Cal. July 23, 2019). In the Screening Order, the Court found that Plaintiff's allegations fall within this narrow exception, because she adequately asserts that prison officers were aware she had a risk of falls due to her debilitating headaches which caused her to lose physical coordination, but they nevertheless left her in a cell where the floors were "slicker than ice" due to the flooding shower for 33 days. (ECF No. 127 at 7.) Accepting Plaintiff's allegations as true and drawing all reasonable inferences in her favor, Plaintiff sufficiently alleges that she was unable to provide for her own safety under the circumstances here because of the loss of her inability to maintain physical coordination. The Court thus finds that Plaintiff sufficiently states a claim and rejects Defendants' argument to the contrary.

Defendants also contend that because Plaintiff alleges she was not injured in an actual fall, she lacks Article III standing. (ECF No. 159 at 13.) But Defendants apparently missed Plaintiff's allegations that she "suffered substantial harm" and her detailed assertions about how "[w]ith hypervigilance, [she] narrowly avoided such injury [from falling given her disabled conditions]." (ECF No. 116 at 10-11.) Plaintiff sufficiently alleges

1   injury, even if she did not sustain an actual fall, to show she has standing to bring her

2   claim.

3       Finally, Defendants argue they are entitled to qualified immunity because the law

4   is not clearly established that exposure to black mold and any resulting symptoms are

5   objectively serious medical conditions supporting a violation of the Eighth Amendment.

6   (ECF No. 159 at 14.) In the Screening Order, the Court found that Plaintiff's allegations

7   that exposure to black mold for more than a month caused health issues constitute a

8   claim regarding severe lack of sanitation and are sufficient to state a conditions of

9   confinement claim. (ECF No. 127 at 6 ("[S]ubjection of a prisoner to lack of sanitation that

10  is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth

11  Amendment.") (quoting *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314, *opinion amended*

12  *on denial of reh'g*, 75 F.3d 448 (9th Cir. 1995)).) Plaintiff specifically alleges she suffered

13  from back, neck, and hand pain; allergies to mold; neurological conditions; lethargy;

14  serious breathing trouble; severe abdominal pain; oral sores; anal bleeding; ear, nose,

15  and throat problems; skin issues; light-headedness; profuse perspiration; severe

16  diarrhea; increase of drastic headaches; right foot injury; and cardiovascular

17  complications.[8] (ECF No. 116 at 5-6.) Based on these allegations, Plaintiff's exposure to

18  black mold for 33 days and the resulting medical issues are objectively serious medical

19  conditions, and the Court thus rejects Defendants' argument to the contrary.

20      **B.    Plaintiff's Objection (ECF No. 249)**

21      Plaintiff objects to the Court's May 19, 2025, minute order deeming her motion for

22  voluntary dismissal withdrawn (ECF No. 248 ("May Order")).[9] (ECF No. 249.) In her

23

24          [8]Defendants appear to challenge Plaintiff's factual allegations in contending it
    "simply implausible" for her to suffer "some severe respiratory injury as the result of black
25  mold exposure." (ECF No. 159 at 14.) But Plaintiff alleges she is allergic to mold (ECF
    No. 116 at 11) and accepting her allegations as true, the Court cannot find that her
26  allegation as to respiratory symptoms are implausible.

27          [9]The Court construes the Objection as a motion for reconsideration since the only
    means to ask the district court to reconsider is by asking for reconsideration, not by filing
28  an objection.

1    Objection, Plaintiff states that in her prior filing marked "Contingency" (ECF No. 247),

2    which the Court treated as a request to withdraw her underlying motion for voluntary

3    dismissal (ECF No. 244), she did not intend to request an absolute withdrawal of the

4    voluntary dismissal motion, but merely to request "contingent" conditions for dismissal,

5    including additional orders from the Court imposing requirements on Defendants related

6    to due process. (ECF Nos. 249 at 1, 247.) The Court emphasizes that if this action is

7    voluntarily dismissed without prejudice, Plaintiff would retain the ability to re-file the action,

8    but the Court will not impose additional conditions on Defendants as proposed in the

9    document marked "Contingency" to the extent they go beyond requiring Defendants to

10   comply fully with existing procedures. In fact, attaching withdrawal of this lawsuit on any

11   conditions would necessarily require continued litigation of this case to its conclusion.

12   Because it appears that Plaintiff intended to request new relief and separate orders from

13   the Court in her Contingency filing (ECF No. 247)—and because the Court cannot provide

14   this relief or impose new conditions on Defendants in granting a motion for voluntary

15   dismissal—the Court will continue to treat the voluntary dismissal motion (ECF No. 244)

16   as withdrawn, as set out in its May Order, and the action will proceed accordingly. If

17   Plaintiff wishes to reinstate her request for voluntary dismissal without prejudice, *without*

18   contingent conditions, she may inform the Court of this in a clear statement without

19   attaching any conditions.[10]

20   **IV.    CONCLUSION**

21           The Court notes that the parties made several arguments and cited to several

22   cases not discussed above. The Court has reviewed these arguments and cases and

23   determines that they do not warrant discussion as they do not affect the outcome of

24   Defendants' Motion.

25           It is therefore ordered that Defendants' motion to dismiss (ECF No. 159) is granted

26   in part and denied in part. It is granted with respect to Plaintiff's fourth claim for denial of

27   _____

28   [10]This point needs to be emphasized, because Plaintiff recently filed a document titled "Voluntary Dismissal Update" (ECF No. 259) where she appears to raise issues unrelated to the claims in the Screening Order. The Court will disregard this filing.

access to the courts; it is denied as to the remaining claims. Dismissal of Plaintiff's fourth claim is with prejudice.

It is further ordered that Plaintiff's objection (ECF No. 249) is overruled.

DATED THIS 27th Day of June 2025.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE